AO 106 (Rev. 04/10) Application for a Search Warrant        AUTHORIZED AND APPROVED/DATE: [signature] 1/26/2021



FILED
JAN 2 6 2021
CARMELITA REEDER SHINN, CLERK
U.S. DIST. COURT, WESTERN DIST. OKLA.
BY_____ DEPUTY

# UNITED STATES DISTRICT COURT
for the
Western District of Oklahoma

In the Matter of the Search of  )
)
a black Apple Iphone, Model Number  )   Case No  M-21-55-P
MQ9D2LL/A and Serial Number  )
F18VF4BJJCLY seized from MONICA  )
GALVAN  )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment "A"

located in the ____Western____ District of ____Oklahoma____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment "B"

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 846 | Drug Conspiracy |
| 21 U.S.C. § 841(a)(1) | Possession of controlled substances with intent to distribute |

The application is based on these facts:
See attached Affidavit of Special Agent Tyler Rawdon, Drug Enforcement Administration (DEA), which is incorporated by reference herein.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Applicant's signature

TYLER RAWDON, Special Agent (DEA)
Printed name and title

Sworn to before me and signed in my presence.

Date: 1/26/2021

_____
Judge's signature

City and state: Oklahoma City, Oklahoma        GARY M. PURCELL, U.S. Magistrate Judge
Printed name and title

## ATTACHMENT A

The property to be searched is described as a Black Apple IPhone with Model Number MQ9D2LL/A and Serial Number F18VF4BJJCLY; hereinafter the "**Target Device.**" The **Target Device** is currently located in secure evidence storage at DEA Oklahoma City, located at 901 NE 122nd Street, Oklahoma City, Oklahoma. This warrant authorizes the forensic examination of the **Target Device** for the purpose of identifying the electronically stored information described in Attachment B.

**Black Apple IPhone with Model Number MQ9D2LL/A and Serial Number F18VF4BJJCLY**



## ATTACHMENT B

1. All records on the **Target Device** described in Attachment A that relate to violations of 21 U.S.C. §§ 841 and 846 involving ESTRADA-TORRES, GALVAN, and others, including:

   a. lists of customers and related identifying information;

   b. types, amounts, and prices of drugs smuggled as well as dates, places, and amounts of specific transactions;

   c. any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

   d. all bank records, checks, credit card bills, account information, and other financial records.

2. Evidence of user attribution showing who used or owned the **Target Device** at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

   a. records of Internet Protocol addresses used;

   b. records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have

been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

2

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF A BLACK APPLE IPHONE, MODEL NUMBER MQ9D2LL/A AND SERIAL NUMBER F18VF4BJJCLY SEIZED FROM MONICA GALVAN | Case No. <u>M-20-       -P</u> |

**AFFIDAVIT IN SUPPORT OF
<u>AN APPLICATION FOR A SEARCH WARRANT</u>**

I, Special Agent Tyler Rawdon, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.  I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property— electronic devices, as further described in Attachment A hereto—which are currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2.  I am a Special Agent (SA) of the Drug Enforcement Administration (DEA). As such, I am "an investigative or law enforcement officer of the United States" within the meaning of Section 2510(7) of Title 18, United States Code; that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, the offenses enumerated in Title 18, United States Code, Section 2516. I have been a DEA Special Agent since August

2019. After successfully completing the DEA Basic Agent Academy in Quantico, Virginia, I was assigned to the DEA Oklahoma City.

3. The facts set forth in this affidavit are based upon my personal observations, my training and experience, reports provided to me by other law enforcement officers, and statements made by witnesses and other concerned parties. Since this Affidavit is being submitted for the limited purpose of establishing probable cause for the requested warrant, I have not included each and every fact known to me concerning this investigation.

4. Based on the facts set forth in this Affidavit, there is probable cause to believe that violations of 21 U.S.C. § 846 and 21 U.S.C. § 841 have been committed by Luis ESTRADA-TORRES and Monica GALVAN, and other known and unknown co-conspirators.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

5. The property to be searched is **a black Apple IPhone with Model Number MQ9D2LL/A and Serial Number F18VF4BJJCLY** (hereinafter the **Target Device**). The **Target Device** is currently located in secure evidence storage at DEA the Oklahoma City District Office.

6. The applied-for warrant would authorize the forensic examination of the **Target Device** for the purpose of identifying electronically stored data particularly described in Attachment B.

2

## PROBABLE CAUSE

7. I submit this affidavit in support of an application for a search warrant for the **Target Device**. An extensive investigation has revealed that the **Target Device** is associated with a Drug Trafficking Organization (DTO) operating in the Western District of Oklahoma.

8. On October 9, 2020, members of DEA Oklahoma City and Oklahoma Bureau of Narcotics had identified Luis ESTRADA-TORRES as a methamphetamine trafficker operating within Oklahoma City, Oklahoma.

9. On October 30, 2020 and December 15, 2020, members of DEA Oklahoma City conducted controlled purchases of methamphetamine from ESTRADA-TORRES using the same DEA confidential source for both transactions. During both of these controlled purchase buys the DEA CS had direct contact with ESTRADA-TORRES, communicating with usually through an application called WhatsApp. The WhatsApp communications between ESTRADA-TORRES and the DEA CS were monitored and preserved by law enforcement.

10. On December 18, 2020, members of DEA Oklahoma City planned a two kilogram buy bust operation using the same DEA CS and targeting ESTRADA-TORRES. Once again, the DEA CS contacted ESTRADA-TORRES via WhatsApp to coordinate the two kilogram delivery. Surveillance was maintained on ESTRADA-TORRES throughout the day as ESTRADA-TORRES

communicated with the DEA CS regarding the timing and location of the transaction.

11. At approximately 4:00 p.m., on December 18, 2020, ESTRADA-TORRES was observed meeting with a silver Dodge minivan bearing Oklahoma License plate JVG957. This vehicle was registered to Monica GALVAN at 505 SE 45th St. Oklahoma City, Oklahoma. Monica GALVAN was later identified as the driver of the minivan when it met with ESTRADA-TORRES. ESTRADA-TORRES was observed retrieving a cardboard United State Postal Service box with grey duct tape on it from GALVAN's vehicle. ESTRADA-TORRES then left the location and called the DEA CS via WhatsApp and advised the CS that ESTRADA-TORRES was *en route* to the meet location.

12. At approximately 5:15 p.m., OHP Trooper Doug George observed ESTRADA-TORRES commit a turn signal violation near I-240 and Bryant. Trooper George conducted a traffic stop on ESTRADA-TORRES near the same location. While approaching the vehicle on the passenger side, Trooper George observed a USPS box in the back seat of ESTRADA-TORRES's vehicle. He also observed that ESTRADA-TORRES appeared to be quickly typing on his phone and checking his driver side mirror. As the roadside investigation continued, Trooper George was assisted by Trooper Sawatsky. Trooper Sawatsky deployed his certified narcotics detection dog ("NDD") around the exterior of ESTRADA-TORRES's vehicle to conduct an open air sniff. Trooper Sawatsky advised Trooper

4

George that his NDD had alerted to the presence of the odor of illegal narcotics emanating from ESTRADA-TORRES's vehicle. A probable cause search was then conducted on the interior of the vehicle. In the USPS box that was observed being transferred from GALVAN to ESTRADA-TORRES, Trooper George and Sawatsky located two bundles of suspected methamphetamine. A roadside field test was conducted which resulted presumptive positive for methamphetamine. The two bundles weighed approximately 1 kilogram each.

13.     Based on the results of this traffic stop both ESTRADA-TORRES and GALVAN were both arrested. A post-*Miranda* interview was conducted with ESTRADA-TORRES at the Moore Police Department. During this interview ESTRADA-TORRES admitted to selling approximately 1-2lbs of methamphetamine per week. During a post-*Miranda* interview of GALVAN, GALVAN provided the **Target Device** to investigators and provided the lock code to verify information GALVAN was attempting to provide to investiagtors. While reviewing a WhatApp conversation on this phone Special Agent Rawdon observed a photograph sent by GALVAN of a USPS box with multiple packages which appeared to be kilogram quantities of methamphetamine. Both the box and the packages closely resembled what was seized by OHP Troopers earlier in the day. A caption of this photo sent by GALVAN stated "There are 7 here." Leading investigators to believe that GALVAN had recently been in posession of 7 kilograms of methamphetamine in the same box that was seized by OHP.

5

14. Based on the foregoing, I believe that GALVAN and ESTRADA-TORRES are both involved with methamphetamine distribution related to a drug trafficking organization within the Western District of Oklahoma. Moreover, GALVAN had the **Target Device** in her possession incident to her arrest. It was seized from GALVAN incident to her arrest and taken into DEA custody as evidence. Based on the foregoing, I believe there is probable cause to believe that the **Target Device** contains additional narcotic related information and believe that probable cause exists to search this cell phone for this additional information.

15. The **Target Device** is currently located in secure evidence storage at the DEA Oklahoma City District Office. In my training and experience, I know that the **Target Device** has been stored in a manner in which its contents are (to the extent material to this investigation) in substantially the same state as they were when the device first came into the possession of DEA Oklahoma City.

## **TECHNICAL TERMS**

16. Based on my training and experience, I use the following technical terms to convey the following meanings:

   a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other

6

wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various

7

types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning

System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital

9

data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

17. Based on my training, experience, and research, I know that the **Target Device** has capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

18. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

19. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the **Target Device** was used, the

purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the **Target Device** because:

a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored

       on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

    e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

20. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the **Target Device** consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the **Target Device** to human inspection in order to determine whether it is evidence described by the warrant.

21. *Manner of execution.* Because this warrant seeks only permission to examine a **Target Device** already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

22. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the **Target Device** described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

_____
TYLER RAWDON
Special Agent
Drug Enforcement Administration

Subscribed and sworn to before me on January 26th, 2021.

_____
GARY M. PURCELL
United States Magistrate Judge
Western District of Oklahoma

13

## ATTACHMENT A

The property to be searched is described as a Black Apple IPhone with Model Number MQ9D2LL/A and Serial Number F18VF4BJJCLY; hereinafter the "**Target Device.**" The **Target Device** is currently located in secure evidence storage at DEA Oklahoma City, located at 901 NE 122nd Street, Oklahoma City, Oklahoma. This warrant authorizes the forensic examination of the **Target Device** for the purpose of identifying the electronically stored information described in Attachment B.

**Black Apple IPhone with Model Number MQ9D2LL/A and Serial Number F18VF4BJJCLY**



## ATTACHMENT B

1. All records on the **Target Device** described in Attachment A that relate to violations of 21 U.S.C. §§ 841 and 846 involving ESTRADA-TORRES, GALVAN, and others, including:

    a. lists of customers and related identifying information;

    b. types, amounts, and prices of drugs smuggled as well as dates, places, and amounts of specific transactions;

    c. any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

    d. all bank records, checks, credit card bills, account information, and other financial records.

2. Evidence of user attribution showing who used or owned the **Target Device** at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

    a. records of Internet Protocol addresses used;

    b. records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have

been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.